UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | |
|---|---|
| BRUCE BLOCK and JANICE BLOCK,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; BUREAU OF INDIAN AFFAIRS; DEB HAALAND, in her official capacity as the Secretary of the U.S. Department of the Interior: BRYAN NEWLAND, in his official capacity as the Principal Deputy Assistant Secretary – Indian Affairs for the Department of the Interior; RUSSELL HAWKINS, in his official capacity as the Superintendent of the Sisseton Agency for the Bureau of Indian Affairs; and TIMOTHY LAPOINTE, in his official capacity as the Great Plains Regional Director of the Bureau of Indian Affairs;<br><br>　　　　　　　Defendants. | 1:21-CV-01025-CBK<br><br><br><br>MEMORANDUM OPINION AND ORDER |

**INTRODUCTION**

Plaintiffs, enrolled members of the Sisseton-Wahpeton Sioux Tribe in Northeastern South Dakota, instituted this action on September 10, 2021, pursuant to the Administrative Procedures Act, 5 U.S.C. § 702 *et seq.*, seeking to compel the defendants to act on their November 18, 2019, requests to partition six parcels of trust property in which they hold an undivided ownership interest. The requests were received by the Bureau of Indian Affairs ("BIA") on November 20, 2019. On November 24, 2021, prior to the filing of an Answer, this matter was stayed for 180 days to allow the Bureau of Indian Affairs ("BIA") time to attempt to accomplish the requested partitions. On June 3, 2022, the parties filed a motion to extend the stay based upon the BIA's failure to complete the partition process. The motion was denied and defendants were ordered to file an answer to the complaint.

While this case was pending, the parties met in an attempt to resolve the plaintiffs' requests for partition. Partition is dependent upon a determination that the value of the affected minor landowners' allotment after partition is not less than the value to them before the partition. On May 3, 2023, defendants filed a motion for an extension of the Rule 16 order deadlines on the basis that the BIA had still not completed survey work required before expert witnesses could weigh in on the valuation of any proposed partition of the parcels at issue. That third motion to delay this case was denied on the basis that the executive branch had engaged in dilatory practices which are nonresponsive to the needs of the federal judiciary.

In September 2023, as the date for the pretrial conference approached, I notified the parties that I rejected defendants' defense that plaintiffs had failed to exhaust administrative remedies, finding that exhaustion is futile, and ordered the parties to file a status report prior to the pretrial conference. Defendants filed a status report setting forth that survey work had not been completed due in part to the Bureau of Land Management's ("BLM") delay in the survey process and staff shortages in the Montana BLM office. Defendants notified the Court that all such survey projects were being "pushed into next year" as "there is no surveyor available to perform the work."

A pretrial conference was held on September 29, 2023. The parties reported that they have reached a settlement as to the partition of five of the six parcels at issue in plaintiffs' complaint and the partitions of those parcels was complete. Defendants contended that a settlement had been reached as to the partition of the sixth parcel but the partition had not been accomplished because the plaintiffs later advised that they were not then in agreement with the partition boundaries.

It has been nearly four years since the plaintiffs filed their administrative request to partition the six allotted trust land parcels in which they own substantially more than a 50 percent interest. An evidentiary hearing was held October 11, 2023, to resolve a dispute as to whether plaintiffs entered into a settlement as to the sixth parcel and as to what relief the parties are entitled, if any.

## DECISION

In 1984, Congress enacted PL 98-513, An Act pertaining to the inheritance of trust or restricted land on the Lake Traverse Indian Reservation, North Dakota and South Dakota, and for other purposes. 98 Stat. 2411. That Act provides, in relevant part:

> SEC. 7. (a) Whenever the tribe or an enrolled member, or members, of the tribe holds at least a 50 per centum undivided interest in trust or restricted land within the reservation, the Secretary of the Interior, upon the request of the tribe or the enrolled member, or members, of the tribe shall partition the allotment or part thereof: Provided, That whenever the tribe requests partition, the Secretary shall partition the allotment to the advantage of the heirs, except that any partition shall assure that the tribe retains one contiguous divided interest in the land unless the tribe agrees to a different division: Provided further, That whenever an enrolled member or members of the tribe requests partition, the fair market value of the lands remaining after partition shall not be less than the fair market value of the interest, prior to partition, of the owners of such lands. The person or persons requesting partition, in order to meet the fair market value requirement of this subsection, may relinquish to the other heirs a portion of their undivided interest in the trust or restricted lands to be partitioned.
>
> (b) The provisions of any law to the contrary notwithstanding, the Secretary of the Interior, upon the request of the tribe or an enrolled heir member of the tribe, shall approve partition of trust or restricted land within the reservation whenever the partitioned interest in the land of the tribe or the enrolled heir member of the tribe is at least two and one-half acres and the owners of more than a 50 per centum undivided interest in the trust or restricted land to be partitioned consent to the partition.
>
> (c) Within one hundred and eighty days after the Secretary, pursuant to subsection (a) or (b) of this section, receives a request to partition trust or restricted land, he (sic) shall issue a new trust patent, in accordance with applicable law, for the lands set apart for the tribe or the enrolled heir member of the tribe, as the case may be, the trust period to terminate in accordance with the terms of the original patent or order of extension of the trust period set out in said patent or in accordance with the provisions of law governing the sale of allotted lands: Provided, That the provisions of any law to contrary notwithstanding, no patent in fee shall be issued for lands partitioned under this section until the expiration of at least ten years from the date of issuance of such new trust patent.

PL 98–513 (S 2663), PL 98–513, October 19, 1984, 98 Stat 2411. The Court found no reported federal court cases concerning § 7 of PL 98-513.

Clearly, the Secretary of the Interior did not act within 180 days of plaintiffs' requests to partition as required by law. This Court has jurisdiction pursuant to 5 U.S.C. § 706(1) to "compel agency action unlawfully withheld or unreasonably delayed."

Bruce and Janice Block together own a 1/2 undivided interest in certain tribal trust land which they inherited. During the pendency of this action (albeit well beyond the statutory mandate for doing so) the BIA consulted with plaintiffs concerning partition of the six parcels set forth in plaintiffs' petition for partition and in their federal complaint. There is no dispute that plaintiffs owned "at least a 50 per centum undivided interest in trust or restricted land within the reservation" as to the six parcels as to which the plaintiffs requested the BIA partition.

Testimony was received that, as part of settlement negotiations, maps showing the proposed partition of the six parcels were prepared by a Department of Interior, BLM employee based upon the Blocks' input. A landowner meeting was held on January 20, 2023, after notice to all affected interest holders in the six parcels at issue. The notice included maps of the six parcels with the proposed acreage and position in the parcels to be allotted to plaintiffs and to be allotted to the remaining interest holders. Plaintiffs appeared with their attorney, along with Jerry Eastman, the Tribal Realty Manager and a Tribal Attorney who were both representing the interests of the Sisseton-Wahpeton Oyate Tribe in the parcels at issue. Also in attendance at that meeting were Dustin Fiebelkorn from the Bureau of Land Management ("BLM") office in Aberdeen, South Dakota, Cody Toutges, a Realty Specialist from the Sisseton Agency of the BIA, Janine Renville, BIA Deputy Superintendent of Trust Services, who is currently detailed to Aberdeen as Deputy Director but is usually based at the Sisseton Agency, and Russell Hawkins, who has been the Superintendent of the Sisseton Agency 22 years.

The January 20, 2023, landowner meeting was held to comply with the BIA's trust responsibility to consult with the Tribe and in an attempt to resolve the plaintiffs' requests for partition. There is no dispute that the partition of five of the parcels was resolved at that meeting. A letter setting forth the BIA's action on the partition of those five parcels was issued on April 21, 2023, which letter was apparently in compliance with the

partitions agreed upon at the January 20, 2023, meeting. The BIA notified the parties to the partition that they had the right to appeal to the Superintendent of the Sisseton Agency. No appeal was filed by any interested party and the April 21, 2023, letter became the final agency action of the Department of the Interior as to the partition of those five parcels.

As to five of the parcels, all requirements needed to apply for trust patents from the BLM were completed or waived and trust patents issued in August and September 2023, setting forth the legal descriptions of the undivided interests allotted in the parcels to the Blocks and to the remaining interest holders, as follows:

| Parcel Number | Block's Interest In Entire Pacel | Apportioned to Blocks | Apportioned to Remainder Owners |
|---|---|---|---|
| 602 | 79.52% | 62.50 acres | 17.50 acres |
| 91251 | 79.52% | 10.00 acres | 35.15 acres |
| 1165 | 79.52% | 94.50 acres | 60.00 acres |
| 91166 | 79.52% | 27.78 acres | 9.98 acres |
| 600-A | 59.2 % | 16.96 acres | 11.79 acres |

Clearly, the percentage of acreage partitioned to the plaintiffs and to the remainder owners was not based merely upon their percentage of ownership in the entire parcel. Instead, PL 98-513 requires that the remaining landowners receive an equivalent (or more) value in their remaining portion as compared to their percentage of value prior to partition. PL 98-513 authorizes the majority owners requesting partition to relinquish some of their value in the partitioned property to accomplish the requirement that the minority owners receive their pre-partition percentage value in the partitioned land.

The sixth parcel which the Blocks requested to have partitioned, 602-A, consists of agricultural land and lakefront property along Pickerel Lake. Pickerel Lake property has drastically increased in value in the last several years due to interest in developing homes along the lake. The current use of the lakefront property includes cabins, mobile homes, campers, or simple campsites which are leased by the BIA with the proceeds provided to the owners in relation to their percentage ownership in the land.

The current map of parcel 602-A is based upon a survey conducted in 1869, well before any desire to plat lots along the lake, and sets forth the shoreline as it existed over 150 years ago. Consequently, a cadastral survey is required prior to partition and subsequent issuance of a trust patent for this parcel. A cadastral survey is a formal survey conducted on federal lands by the BLM and which becomes the official public record of the boundaries of lands owned or managed by federal agencies.

The shoreline in parcel 602-A consists of areas known as Turtle Bay in the north, Shepherd's Bay in the middle, and Bullhead Bay in the south portion of the parcel. Each of these areas are served by private "roads" consisting of gravel or dirt paths which provide access to the lakeshore camp sites in the separate areas. The shoreline in the Turtle Bay area in the north is flat and has a sandy beach. As the shoreline extends south, the beach becomes less sandy, the topography becomes steeper, and Bullhead Bay in the south substantially consists of a lowland swampy area.

The total acreage of Parcel 602-A is 80.69 acres. Plaintiffs own a 95.8 % undivided interest in parcel 602-A while the Tribe and remaining owners own a 4.2% interest. Thus, any area partitioned to the minority owners will be quite small in comparison to the area partitioned to the Blocks. It is undisputed that, at the landowner meeting, the initial proposed partition map of parcel 602-A allotted 4.46 acres in Turtle Bay to the minority owners and the remaining 76.69 acres of the parcel to the Blocks. This allotment map conforms generally with the parties' interest in the total acreage of that parcel.

During the January 20, 2023, landowner meeting, the Tribe expressed its desire to have a portion reserved to the minority landowners in the north Turtle Bay area, as was originally proposed by the Blocks and represented on the initial partition map for parcel 602-A. One of the reasons for the Tribe's desire was that the minority owners' rental income would be based upon one or two camp sites if their portion was taken from the southern Bullhead Bay area. The swampy steep topography prevents the development of any further camp rental sites. A small lakefront partition on the north portion of the parcel would include more rental sites from which the minority owners could receive

rental income. The Tribe further desired a partition in the northern portion of 602-A due to the Turtle Bay area's location at the intersection of two highways and the inclusion of a small area of agricultural land west of the shoreline area and across the highway which is well suited to the building of a gas station serving the area.

The parties negotiated the initial proposed partition to the minority landowners of Parcel 602-A. The Blocks suggested that the small triangular shaped area agricultural area across the highway should remain with the rest of the agricultural land allotted to the Blocks. In exchange for the loss of that .85 acre, the parties negotiated the partition of parcel 1165 abutting Campbell Slough, another recreation area south of Pickerel Lake. The Tribe, on behalf of itself and the minority owners, agreed to partition parcel 1165 so that the Blocks received all the shoreland in parcel 1165 in exchange for additional acres in parcel 1165 and fewer acres in parcel 602-A. The record is clear that, at the January 20, 2023, landowner meeting, the Blocks and the Tribe engaged in negotiations as to each of the parcels individually and together as a whole package deal.

At several points during the negotiations, one or more of the plaintiffs would privately convene with their attorney and then rejoin the negotiations. During the final stages of the meeting, after one such private meeting with counsel, counsel for the plaintiffs came back into the meeting and stated that they had a deal as to parcel 602-A. A new map was drawn at that meeting apportioning only 3.61 acres to the minority owners in the northernmost area of Turtle Bay. All parties shook hands and believed the matter was resolved.

In reliance upon the oral agreements reached at the landowner meeting, the BIA proceeded with the requirements for the issuance of trust patents. The parties were all aware that, as to parcel 602-A, a detailed appraisal was necessary to make sure that the proposed partition complied with PL 98-513's requirement that "the fair market value of the lands remaining after partition shall not be less than the fair market value of the interest, prior to partition, of the owners of such lands." The Blocks, as the persons requesting partition, "may relinquish to the other heirs a portion of their undivided interest in the trust or restricted lands to be partitioned" in order to meet the fair market

7

value requirement as to the minority owners. The BIA cannot approve a partition that does not retain to the minority owners' percentage value in the un-partitioned parcel. In addition, as set forth above, following an appraisal and final partition to conform with the appraisal and the law, a trust patent could not be issued without a cadastral survey.

In reliance upon the settlement agreement, the BIA contracted with David Lawrence to conduct an appraisal of parcel 602-A, which he did. His appraisal was reviewed in detail and approved by a Regional Appraiser for the Department of Interior Appraisal and Valuation Services Office (AVSO). The appraiser concluded that parcel 602-A had a total retail value (if owned in fee simple) of $10,885,767 if the hypothetical 33 shoreline lots were sold individually. Of that total, the agricultural land consisting of 53.21 acres was appraised at $143,667 while the lakefront property was appraised at $10,742,100. However, the lakefront property value on an "as-is" basis (if owned in fee simple) if sold in one "bulk" land deal is only $3,883,793. The value of the agricultural land does not change between retail and "as-is" condition so the total value on that basis would be $4,027,460.

For the purposes of partition, the appraiser used the "as-is" retail values. The appraiser then applied a discounted analysis, taking into account, *inter alia*, that the hypothetical lots have not been platted, are not developed, and are not hooked up to utilities which resulted in a fair market value of parcel 602-A of $4,026,000 when sold as a bulk land purchase. Prior to partition, the minority landowners' 4.2% interest in parcel 602-A was valued at $169,092. While the Blocks' 95.8% interest was valued at $4,856,908. The settlement reached by the parties allotted 3.6 acres of lakefront property in parcel 602-A to the minority landowners valued at $286,896 with Blocks receiving a value of $3,739,104.

After partition, based upon the agreement reached at the January 20, 2023, landowners meeting, the minority landowners' interest in the portion partitioned to them did not decrease and the partition is therefore in conformity with PL 98-513. While the value of the Blocks' interest did decrease following partition, the law allows for them to relinquish a portion of their value to comply with the law. In this case, their

relinquishment of value in their apportionment of parcel 602-A was negotiated as part of an exchange for lakefront property in another parcel.

A cadastral survey was scheduled to take place during the 2023 survey season (spring, summer, fall). Such a survey could not be conducted in Northern South Dakota during the winter months, which in this area often encompass November through April. As the time approached to conduct the survey, the Blocks notified the defendants that they requested a change to the location of the partition boundary for parcel 602-A. Plaintiffs now insist that their allotment include the Turtle Bay area on the North end of the parcel and that the minority owners receive a portion on the southernmost portion of the parcel in the Bullhead Bay area. Such a change could not be accomplished without additional consultation with the Tribe. Further, a survey, which is conducted by the placement of permanent survey monuments in the ground, could not go forward if the boundaries are not certain. A change in boundaries would also require another appraisal to be conducted.

An evidentiary hearing was held to determine whether plaintiffs did enter into a settlement agreement on January 20, 2023, and, if so, whether this Court should enforce the agreement. At the evidentiary hearing held in this matter, Mr. Block eventually testified that he had in fact agreed to a partition of parcel 602-A. However, he contends that the agreement was not in writing, was contingent on an appraisal and a survey, and was not a binding agreement. He also testified that only he had agreed to the partition and that, although Ms. Block (his sister) did not object, she remained silent and therefore did not agree to settle the partition of parcel 602-A. Ms. Block did not testify at the evidentiary hearing and no representations as to her position on the settlement issue were stated by counsel of record. Every other participant at that landowner meeting who remembered what was said testified that the Blocks had, through their attorney, entered into a settlement of their partition claim as to parcel 602-A.

Mr. Block testified that he now objects to the previously agreed upon partition because, if the Blocks do not receive the northern most portion of the parcel, there would be no access for them to their portion of the northern Turtle Bay shoreline without going

9

through the land partitioned to the minority owners. Mr. Block further contends that, if they receive the southern portion of the parcel, they would have no access to the South Bullhead Bay area because that area must be accessed through the Tribe's land abutting the South border of parcel 602-A. Mr. Block testified that a road in the adjacent parcel owned by the Tribe could be used by the Tribe and other minority owners to access the Bullhead Bay shoreline. Testimony at the evidentiary hearing belied that claim.

If there is no access to the South Bullhead Bay area for the plaintiffs, that would also be the case for the minority owners if they were allotted that area. The testimony and exhibits received show that there are currently rudimentary roads or paths from the highway to the lakeshore areas of parcel 602-A. According to Mr. Block, the road between the Turtle Bay and Shepherd's Bay areas is blocked with planters. If that area is allotted to the Blocks, they would be free to remove the planters which are currently blocking their access to their portion of the Turtle Bay shoreline.

The defendants contend that that the plaintiffs agreed to a settlement of the partition boundaries for parcel 602-A in January 2023, that, based upon the appraisal, their agreed upon partition boundaries comply with PL 98-513 and can therefore be approved, that a cadastral survey can be conducted of parcel 602-A in the next two weeks, and trust patents could thereafter be issued for this parcel.

"Basic principles of contract formation govern the existence and enforcement of the alleged settlement" and the parties do not dispute that South Dakota law applies in this case. Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006). Under South Dakota law, the elements necessary for the formation of a binding agreement to settle a case are (1) parties capable of contracting, (2) their consent, (3) a lawful object, and (4) sufficient cause or consideration. American Prairie Construction Co. v. Hoich, 594 F.3d 1015, 1023 (8th Cir. 2010) (*citing* Jacobson v. Gulbransen, 623 NW2d 84, 90 (SD 2001)). I find that the foregoing elements have been clearly established in this case and that the parties reached a binding settlement as to the partition of the six parcels requested by the plaintiffs in their petition to the BIA and in their federal complaint.

Plaintiffs contend that the negotiations did not result in a settlement agreement as to parcel 602-A because partition of that parcel was dependent upon the defendants complying with their obligations to conduct an appraisal and a cadastral survey of that parcel. Neither of those matters are an essential term of the agreement to partition parcel 602-A. Those matters are ministerial actions required to comply with federal law regarding partition and federal regulations regarding the issuance of land patents. No testimony was received that the results of either the appraisal or the survey would alter the agreed upon partition boundaries.

Plaintiffs' claim that the settlement agreement was contingent upon the results of the appraisal and survey is unsupported by the record. Even if the settlement agreement was contingent on obtaining an appraisal and survey, plaintiffs are precluded from relying on such conditions to invalidate the settlement agreement. First, an appraisal was in fact performed costing $10-15,000. If a new appraisal is required due to plaintiff's actions, the cost of such appraisal would increase based upon the passage of time, rising property values, intervening sales, changing interest rates, and many other factors upon which the original appraisal relied, which would have to be considered. There is no evidence in the record that plaintiffs backed out of the agreement based upon the appraisal. Second, plaintiffs' conduct in repudiating the settlement prevented the claimed survey condition precedent from occurring. Plaintiffs are estopped from relying upon and benefiting from the claimed conditions precedent. Am. Prairie Constr. Co. v. Hoich, 594 F.3d 1015, 1023 (8th Cir. 2010) (*citing* Johnson v. Coss, 667 N.W.2d 701, 706 (S.D.2003) ("An individual who prevents the occurrence of a condition may be said to be estopped from benefiting from the fact that the condition precedent to his or her obligation failed to occur.")).

I find that a settlement of this entire matter occurred during the January 20, 2023, landowners meeting. The plaintiffs cannot now back out of that settlement. At the very least, the plaintiffs are estopped from now claiming that no enforceable settlement occurred when they have received trust patents for parcels in which they received additional lakefront ownership in exchange for the agreed upon partition of parcel 602-A.

11

The defendants can and should proceed with the cadastral survey and issue the trust patents based upon the partition agreed to by the parties, as set forth in Exhibit 3.

In any event, the BIA could proceed to partition this property at any time during the pendency of this litigation and did do so after consulting with the Tribe and affording the plaintiffs and the minority owners an opportunity to participate in the partition decisions. Plaintiffs filed suit seeking an order requiring the BIA to proceed with partition as requested and the BIA did in fact partition five of the parcels. If the defendants issue a decision and notify the plaintiffs as they did with regard to the other five parcels, the plaintiffs could either accept the partition of parcel 602-A or appeal the partition to the Superintendent.

## ORDER

Based upon the foregoing,

IT IS ORDERED that the defendants' request to enforce the settlement agreement reached in this case is granted and the defendants should proceed with a survey and the issuance of trust patents as to parcel 602-A.

IT IS FURTHER ORDERED that, based upon the settlement of this matter, the plaintiffs' request for an order compelling defendants to act on their requests to partition is moot.

IT IS FURTHER ORDERED that the only remaining issue in this case is whether plaintiffs are entitled to costs, disbursements, and attorneys fees as requested in their prayer for relief and I find and conclude that they are not so entitled.

DATED this 13th day of October, 2023.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge